### Kolb v. Ruhl's Adm'r et al.

December 20, 1946.

`Ben F. Washer for appellant.

Skaggs, Hays & Fahey for Kentucky Trust Company.

Anna H. Settle for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

John Ruhl died intestate a resident of Jefferson county, Kentucky, on June 13, 1945, leaving a substantial estate. He was unmarried, had no children, and was predeceased by his parents, brothers, and sisters. His only heirs at law were children and grandchildren of deceased brothers and sisters of his father and mother. The Kentucky Trust Company qualified as administrator, and brought suit to settle the estate. Five first cousins and six first cousins once removed of the decedent on the paternal side joined the administrator as plaintiffs, and numerous persons who claimed to be cousins and heirs at law of John Ruhl on both the paternal and maternal sides were made defendants. Marguerite Kolb was made a defendant because she was the adopted child of Elizabeth Kautt, a first cousin of John Ruhl on the

maternal side. She filed an answer, counterclaim, and cross-petition in which she alleged that she was the legally adopted child of Elizabeth Kautt; that the judgment of adoption was entered in the Jefferson circuit court on November 18, 1930; that Elizabeth Kautt was a sister of John Ruhl's mother and died prior to the death of John Ruhl, leaving as her only heir at law the defendant and cross-petitioner, Marguerite Kolb. She asked to be adjudged an heir at law of John Ruhl, deceased, and entitled to receive one-twelfth of his estate. Certain defendants who were heirs at law of John Ruhl on the maternal side filed a demurrer to the answer, counterclaim, and cross-petition of Marguerite Kolb. The court sustained the demurrer, and adjudged that Mrs. Kolb had no interest in the estate of John Ruhl. The administrator has filed a brief in which it takes a neutral position, stating that it is interested solely in an early and proper distribution of the assets of the estate, but it sets forth succinctly the issue presented on this appeal and the questions involved in the determination of that issue. These are as follows:

"May a child, adopted in 1930 under KS 2071 inherit from a first cousin of her adoptive mother, said first cousin having died in 1945, after the enactment of KRS 405.200 in 1940?

"The questions involved in the determination of this issue are as follows:

"1. Does the law in effect at the time of adoption or the law in effect at the date decedent died govern the right of the adopted child to inherit from her adoptive mother's first cousin?"

"2. If the law in effect at the date the decedent died governs, does a proper construction of that law (KRS 405.200) grant an adopted child the right to inherit from her adoptive mother's first cousin?

It is appellant's contention that her rights are to be determined by the adoption statute of 1940, Chapter 94, Acts of 1940, now KRS 405.140 to 405.240, inclusive, and KRS 391.080, while the appellees contend that her rights are to be determined by section 2071 of the Kentucky Statutes, which was the statute prevailing at the time she was adopted in 1930. It is conceded that the

judgment is correct if the adoption statute in force in 1930 controls, since this court held in numerous cases under that statute that an adopted child could not inherit from the ancestor, the collateral kindred or the natural children of the adoptive parent. Woods v. Crump, 283 Ky. 675, 142 S. W. 2d 680; Sanders v. Adams, 278 Ky. 24, 128 S. W. 2d 223. The chancellor adjudged that the statute in force at the time of the adoption controlled, and he rested his decision on the language used in the 1940 Act. He was of the opinion that the language used in the Act specifically restricted the operations of the Act to a child adopted under that Act. In his opinion he stressed the use of the words "any child adopted according to this chapter" in section 1, and the words "a child adopted under this chapter" in section 2 of KRS 405.200. The language used by the Legislature in the Act of 1940 was "the child so adopted" in the first instance, and "such child" in the second instance. Section 6 of Chapter 94 of the Acts of 1940. The Statute Revision Commission, in preparing the first edition of the Revised Statutes, made the alterations pursuant to the authority conferred upon it by Chapter 86, section 5, of the Acts of 1942, now KRS 447.110, but that section provides that the Commission "shall not alter the sense, meaning or effect of any Act of the General Assembly." If the words substituted by the Statute Revision Commission creates an ambiguity, then, by the authority of KRS 446.130, we may refer to the Act of 1940 for the purpose of resolving the ambiguity. Thieman v. Hancock, 296 Ky. 223, 176 S. W. 2d 418; Fidelity & Columbia Trust Co. v. Meek, 294 Ky. 122, 171 S. W. 2d 41. The Act of 1940 was intended to be a comprehensive and all-inclusive statute on the subject of adoption. All former acts were repealed, but the repealing act was merely the last of a series of similar acts on the subject. The use of the words "the child so adopted" and "such child" in section 6 of the Act does not limit the effects of the Act to children adopted after its enactment. The Legislature was dealing with a class, adopted children, and we find no restrictive language indicating an intention to limit its application to a part of the class. Surely the Legislature did not intend to create two or more classes of adopted children, the rights of inheritance and succession of each class to be determined by the particular law in force when the adoption took place. The

Legislature may change the law of descent and distribution at any time. Woods v. Crump, 285 Ky. 675, 142 S. W. 2d 680; Traughber v. King, 235 Ky. 658, 32 S. W. 2d 8. As said in Shepherd v. Murphy, 332 Mo. 1176, 61 S. W. 2d 746, 747:

"Succession to estates and the right of inheritance is wholly a matter of statutory regulation. It is an exclusive power of the Legislature to determine what persons or whether any persons shall inherit from one who dies intestate, to direct the course of succession of the intestate's property and define what proportion of such estate shall descend to a particular person or class of persons. The Legislature has the power to both create and take away the right of inheritance, and in the exercise thereof it can confer the right of inheritance upon adopted children or adopting parents, or both, deprive the natural parents of any right of inheritance from such adopted child, and fix the course of succession to property in such case."

The heirs and distributees of a person dying intestate are determined by the law of succession as it exists at the time of the death of the owner of the property. McGaughey's Adm'r v. Henry, 54 Ky. 383. We know of no reason why this rule should not apply where the rights of an adopted child are involved. According to the great weight of authority the statute of descent and distribution in effect at the time of the death of the property owner governs the right of the adopted child to inheritance from or through the adopting parent. 2 C. J. S., Adoption of Children, sec. 63; Brooks Bank & Trust Co. v. Rorabacher, 118 Conn. 202, 171 A. 655; Eck v. Eck, Tex. Civ. App., 145 S. W. 2d 231, 234; Gilliam v. Guaranty Trust Co., 186 N. Y. 127, 78 N. E. 697, 116 Am. St. Rep. 536; Appeal of Latham, 124 Me. 120, 126 A. 626. In Sorenson v. Rasmussen, 114 Minn. 324, 131 N. W. 325, 35 L. R. A., N. S., 216, the Supreme Court of Minnesota had a similar question before it. Under the adoption law in force in Minnesota prior to 1891, adopted children could not be made, as an incident of their status as such, heirs at law of the adoptive parents. By an act of 1891 adopted children might, by the act of adoption, be given the status of heirs of the adopting parents, or not, depending on the wish of the adopting parents. Chapter

73 of the Revised Laws of 1905 provided in part as follows (114 Minn. 324, 131 N. W. 326):

"Upon adoption such child shall become the legal child of the persons adopting him, and they shall become his legal parents, with all the rights and duties between them of natural parents and legitimate child. By virtue of such adoption, he shall inherit from his adopting parents or their relatives the same as though he were the legitimate child of such parents, and shall not owe his natural parents or their relatives any legal duty; * * *."

The question presented was whether the section of the Revised Laws of 1905, defining the status of adopted children with reference to the descent of property, applied to all adopted children whether adopted prior or subsequent to the revision. It was held that the section of the Revised Laws of 1905 fixing the status of adopted children should be construed to be a general provision applying to all adopted children without reference to the time of their adoption. The court said:

"The wording of the law harmonizes with this view of its meaning: It applies to a class, and no restrictive term limits its application to a part of the class. The phrase 'by virtue of such adoption' refers generally to statutory adoption, and has no reference to any special manner or method of adoption as provided for in the preceding sections of chapter 73, for such provisions are substantially the same as those in the 1876 statute.

"This section and the related sections constitute the entire law on the subject of adoption as embodied in the revision. No other provision as to the heirship of adopted children is carried into the Revised Statutes. It is not to be assumed, without some substantial basis therefor, that it was intended that the law defining the status of all the then existing adopted children was to be found in the different statutes passed in prior years, and that the Revised Statutes, when passed, should contain the law applicable only to the status of such children as might thereafter be adopted. Nor should it be inferred without something in the statute or existing conditions clearly indicating such meaning, that the Legislature intended that different rules as to heirship should apply

to different individuals within the class of adopted children.''

In Copeland v. State Bank & Trust Co., 300 Ky. 432, 188 S. W. 2d 1017, 1020, this court construed a will of a testator who died in 1925 and held that a child adopted by the testator's daughter in 1937 did not take under the will, but the opinion inferentially recognized the application of the 1940 adoption act to cases of intestacy.

It is appellee's contention that the Act of 1940, even though it applies to prior adoptions, made no change in the rights of adopted children to inherit under the Kentucky law of descent and distribution. Section 2071 of the Kentucky Statutes, which was in force until the Act of 1940 became effective, provided that a court granting an order of adoption ''shall have authority to make an order declaring such person heir-at-law of such petitioner, and as such, capable of inheriting as though such person were the child of such petitioner; * * *.'' Section 6 of the Act of 1940 provides that ''the child so adopted shall be deemed for purposes of inheritance and succession and for all other legal consequences and incidents of the natural relation of parents and children, the same to all intents and purposes as a child born in lawful wedlock of such parents by such adoption.'' This section also provides that if the adopted child dies without lawful issue and is not survived by either of its adopted or natural parents, his property shall descend to his natural and adopted relatives share and share alike. KRS 391.080. The Act of 1940 employed broader and more inclusive language than the adoption statute then in effect, and obviously was enacted to change the existing law as construed by this court. The entire scope of the law as it affected the succession rights of adopted children was changed. The restrictive phraseology of the former statute, which was the basis of the court's construction that adopted children could not inherit through the adoptive parents, was omitted, and adopted children were given the same status as natural children. One of the incidents of this status is the right to inherit through the parent. It is significant that the Act was passed at the first session of the General Assembly after the decision in Sanders v. Adams, supra, construing the former adoption act. Appellees cite a long array of cases from other jurisdictions holding that the particular statute

under review did not give adopted children the right to inherit through their adoptive parents, but an examination of the statutes so construed reveals that in practically every instance the statute contained an exception expressly providing that the adopted child should not be capable of inheriting from the lineal or collateral kindred of the adoptive parents. Though there is authority to the contrary, the weight of authority is to the effect that a statute containing language similar to that in the Act of 1940 gives an adopted child the right to inherit through the adoptive parents. In re Masterson's Estate, 108 Wash. 307, 183 P. 93; In re Waddell's Estate, 131 Wash. 566, 230 P. 822; McCune v. Oldham, 213 Iowa 1221, 240 N. W. 678; In re Cadwell's Estate, 26 Wyo. 412, 186 P. 499; In re Riomann's Estate, 123 Kan. 718, 256 P. 1004; Id., 124 Kan. 539, 262 P. 16; Denton v. Miller, 110 Kan. 292, 203 P. 693; In re Taylor's Estate, 136 Neb. 227, 285 N. W. 538. The language of section 6 of the Act of 1940 to the effect that "the child so adopted shall be deemed for purposes of inheritance and succession and for all other legal consequences and incidents of the natural relation of parents and children, the same to all intents and purposes as a child born in lawful wedlock," is plain, simple, comprehensive, and unambiguous. It means that an adopted child may inherit not only from but through the adoptive parents just as may a natural child.

The judgment is reversed with directions to overrule the demurrer to the answer, counterclaim, and cross-petition as amended.