## In the Matter of the Estate of MEYER CHINSKY, Deceased.

Surrogate's Court, Kings County, June 1, 1936.

*Henry A. Uterhart*, for the petitioner Hyman Marcus, also known as Hyman Chinsky.

*Aaron William Levy*, for Adolph Feldblum, as administrator.

WINGATE, S.   Involved in this proceeding is the basic question of the right of a person who was no natural relative of the intestate but was legally adopted by a parent of the latter while resident in a foreign country, to take in intestate distribution of the estate of his foster brother.

Under ordinary circumstances this court would decline to consider this question at this time, since its determination would be far more appropriate on the accounting, the usual statutory time for which has long since expired.   All parties have, however, adjured the court to give expression of its views on this legal question at this time, since, if favorable to the claimant, it will be necessary for him to assemble proof of his alleged status in one or more foreign countries which will entail a process both tedious and expensive.

The facts as alleged in the petition, which are to be deemed established for present purposes by reason of the motion for judgment on the pleadings on the ground of patent insufficiency in the allegations of the petition (*Matter of Hearn*, 158 Misc. 370, 372), are that in or about the year 1880, in the town of Krinik, Province of Grodno, Russia, which is now a part of Poland, the petitioner was legally adopted under the Hebrew faith by the mother of the intestate.   It is further asserted that this act had the effect of making the petitioner a statutory distributee of the decedent, which is the question of law propounded for a determination; and that the intestate had no closer kin, which is a question of fact possessing no present materiality.

It is, of course, true, as contended by the respondent, that to achieve recognition in this State, an asserted status must have been legally acquired by the petitioner at the place of his prior domicile.   It is equally unquestionable, however, that when such status has been achieved according to the legal mandates of the locale having jurisdiction of the person in question, it will be recognized here.   (*Hubbard* v. *Hubbard*, 228 N. Y. 81, 85; *Ball* v. *Cross*, 231 id. 329, 331; *Dodge* v. *Campbell*, 128 Misc. 778, 780; *Matter of Bennett*, 135 id. 486, 494; *Matter of Mosley*, 138 id. 847, 849.)

In this jurisdiction ecclesiastical regulation of temporal matters is not permitted. (*Chertok* v. *Chertok*, 208 App. Div. 161, 162; *Matter of Goldman*, 156 Misc. 817, 819.) Whether or not the law and procedure in this respect at the time and place of the alleged adoption was similar, or to the contrary, is purely a question of fact (*Hull* v. *Mitcheson*, 64 N. Y. 639, 640; *Phœnix Insurance Co.* v. *Church*, 81 id. 218, 227; *Robb* v. *Washington & Jefferson College*, 185 id. 485, 496; *Genet* v. *Delaware & Hudson Canal Co.*, 163 id. 173, 177; *Van Wyk* v. *Realty Traders, Inc.*, 215 App. Div. 254, 256; *Storrs* v. *Northern Pacific Railway Co.*, 148 id. 403, 406; affd., 208 N. Y. 629; *Matter of Smith*, 136 Misc. 863, 877), which, where pertinent, must be alleged and proved like any other fact. (*Southworth* v. *Morgan*, 205 N. Y. 293, 296.)

The present petition contains an appropriate allegation in this regard in the statement that " My [natural] mother and she [intestate's mother] went to the Rabbi   *   *   *   and he said that this [adoption] would be done and *he did see that it was done legally.*" (Italics not in original.)

As against the present motion, this is a sufficient allegation that the status of foster mother and adopted child was legally consummated in accordance with the laws of the place where the parties were then domiciled.

An interesting and potentially pertinent question which is not raised by any party to the proceeding, concerns the effect of this adoption. Whereas, in the absence of proof, it will usually be inferred that the law of another locality corresponds with that here in vogue (*Hynes* v. *McDermott*, 82 N. Y. 41, 47; *McCulloch* v. *Norwood*, 58 id. 562, 567; *Harris* v. *White*, 81 id. 532, 544; *Matter of Dumarest*, 146 Misc. 442, 443; *Matter of Shuff*, 151 id. 754, 756), the applicability of this principle in respect to statutory law is distinctly questionable. (*First National Bank* v. *National Broadway Bank*, 156 N. Y. 459, 472; *International Text Book Co.* v. *Connelly*, 206 id. 188, 200; *Leonard* v. *Columbia Steam Nav. Co.*, 84 id. 48, 52, 53; *Arbury* v. *De Niord*, 152 N. Y. Supp. 763, 766, not otherwise reported.)

Adoption is purely a matter of the statutory creation of a status with the particular consequent rights established in the enactment. (*U. S. Trust Co.* v. *Hoyt*, 150 App. Div. 621, 624; *Matter of Davis*, 142 Misc. 681, 688; *Matter of Marsh*, 143 id. 609, 610.) The determination of the particular rights accorded is obviously wholly dependent on the particular terms of the individual enactments. Granting, therefore, that the petitioner in 1880 achieved a status in Russia which was designated by its laws as that of an adopted

child, there is no inference whatsoever that he thereby acquired any property rights by reason of this alteration in his status, even in respect to his foster mother. Had his adoption taken place in this State at the same time it is alleged to have occurred in Russia, he would have received no rights of inheritance whatsoever, since at that time the statute of 1873 (Laws of 1873, chap. 830) was still effective which rigorously excluded other than purely personal obligations and privileges. (*Matter of Marsh,* 143 Misc. 609, 611.)

It follows, therefore, that even were the inadmissible inference to be indulged that the statutes of Russia in 1880 corresponded with those which were simultaneously in force in New York so as to create rights in the petitioner similar to those which he would here have received had the adoption been here consummated at that time, there would be a positive inference against an extension of the rights thus acquired in a manner to correspond with those which became effective here in 1887 (Laws of 1887, chap. 703), since the presumption of the continuance of the legal situation existing in Russia in 1880 must be indulged (*Matter of Shupack,* 158 Misc. 873, 891, and authorities cited), with the result that presumptively no property rights whatsoever would have been acquired by him.

For the purpose of a consideration of the basic question upon which the parties desire the opinion of the court, it will, however, be assumed that the rights of the petitioner correspond in all respects with those granted by chapter 272 of the Laws of 1896 which is presently in force in section 114 of the Domestic Relations Law.

This enactment, so far as presently pertinent, provides: " The foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child, and have all the rights * * * of that relation, including the right of inheritance from each other * * * and such right of inheritance extends to the heirs and next of kin of the person adopted, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting."

It is obvious that the last clause of the foregoing quotation, beginning " and such right of inheritance," can have no applicability to a situation in which the person adopted is still living, since it merely extends the right of inheritance theretofore accorded the person adopted to the " heirs and next of kin of the " latter. If the person adopted be living, he has no " heirs and next of kin," since such a relationship can only be generated by his death, " No one can be an heir during the life of his ancestor." (Broom's Legal Maxims, § 383; *Heath* v. *Hewitt,* 127 N. Y. 166, 170; *Matter of Kingsbury,* 192 App. Div. 206, 212; affd., 230 N. Y. 580.)

With this elimination, the only property right accorded by the statute is " the right of inheritance from each other;" that is, by and from the adopted child and the foster parent *inter sese.*

For a recovery in the present situation it would be necessary to read into the statute an additional right in favor of the adopted child, namely, a right to inherit from a person from whom the foster parent would have been entitled to inherit had she survived the person from whom inheritance was claimed. In a case like the present, in which the foster parent predeceased the person from whom inheritance is sought, this would be the creation of an entirely new right, since by reason of the prior death of the foster parent she never possessed any right in the estate of this decedent in consequence of her failure of compliance with the indispensable condition precedent to acquisition, namely, her survival. (*Whittemore* v. *Equitable Trust Co.*, 162 App. Div. 607, 610; *Thorburn* v. *Wende*, 235 id. 424, 429; *Matter of Zimmerman*, 104 Misc. 516, 524.)

By reason of the express statutory limitation in the grant of property rights to the adoptor and adoptee of " inheritance *from each other*," and the application of the principle *expressio unius est exclusio alterius* (*Aultman & Taylor Co.* v. *Syme*, 163 N. Y. 54, 57; *Konner* v. *State*, 180 App. Div. 837, 842; affd., 227 N. Y. 478; *Matter of Hering*, 133 App. Div. 293, 295; affd., 196 N. Y. 218; *Matter of Kennedy*, 149 Misc. 188, 189; *Matter of Burger*, 155 id. 503, 506) and that statutes in derogation of common-law rights are customarily subject to strict construction (*Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388, 393; *Dean* v. *Metropolitan Elevated Railway Co.*, 119 id. 540, 547; *Matter of Coffin*, 152 Misc. 619, 624; *Matter of Zweig*, 145 id. 839, 859; *Matter of Smith*, 136 id. 863, 880), it would seem apparent that in the ordinary case an adopted child is not entitled to intestate inheritance from any person other than from the foster parent. Such has been the substantially uniform tenor of determination. (*Winkler* v. *N. Y. Car Wheel Co.*, 181 App. Div. 239, 241; *Matter of Hall*, 234 id. 151, 152; affd., 259 N. Y. 637; *Hopkins* v. *Hopkins*, 202 App. Div. 606, 608; affd., 236 N. Y. 545; *Matter of Powell*, 112 Misc. 74, 76; affd., 193 App. Div. 965; *Matter of Mawhinney*, 146 Misc. 30, 33; affd., 239 App. Div. 874; *Matter of Marsh*, 143 Misc. 609, 614; *Matter of Brenner*, 149 id. 412, 413.)

*Matter of Walter* (270 N. Y. 201), on which the petitioner so greatly relies, is not in point. That case is merely an ultimately authoritative pronouncement of the wholly logically obvious result of section 29 of the Decedent Estate Law which Surrogate KNAPP of Wayne county attained almost a generation ago in *Matter of Foster* (108 Misc. 604, 612). (See *Matter of Marsh*, 143 Misc. 609, 613.) In both cases a testamentary gift was made to a foster

parent who was within the limits of consanguinity to the testator prescribed in section 29 of the Decedent Estate Law, and the question propounded was whether the provisions of that section, which directed devolution of the subject-matter of the gift, which, but for the statute would have lapsed to the " surviving child " of the legatee, were broad enough to include an adopted child. Since as between the deceased legatee and the person adopted, the relationship of parent and child obviously subsisted by reason of the direct terms of section 114 of the Domestic Relations Law, the only logical answer was an affirmative. In these cases, by reason of the language of section 29, the determining criterion of the person entitled to take was the relationship of the claimant to the deceased legatee. No question of a relationship of the adopted person to any one else was involved and it was merely a question as to whether there was any person in existence who, in legal contemplation, answered to a description of a " child " of the legatee. Section 114 of the Domestic Relations Law furnished an inevitably affirmative answer to this query.

*Matter of Horn* (256 N. Y. 294) was substantially identical in factual set up except that the substitutionary gift was made by the will itself instead of by the statute. There it was further demonstrated that the testator was aware of the relationship and must have anticipated the substitutionary devolution to the adopted child.

On the merits, therefore, and adopting the inadmissible assumption most favorable to the petitioner, that his rights are to be evaluated in the light of the present law of New York, the court is of the opinion that he is not entitled to any distributive share of this estate whatsoever.

Even were the contrary to be determined, however, the present petition must be dismissed. Letters of administration were granted over two years ago to an outstanding member of the bar who posted a surety company bond in the sum of $155,000. He has since been engaged in unravelling the unusually intricate affairs of the estate and is obviously more familiar therewith than any other person could be. Accordingly, even were the petitioner a preferred statutory distributee, this court would, in the interest of the estate, decline to remove the present administrator as a matter of discretion, since the time when persons interested may demand an accounting arrived over a year and a half ago and the rights of all parties could adequately be protected in such a proceeding without the imposition of a double expense upon the estate. (*Matter of Irving,* 153 Misc. 807, 812.)

For the reasons assigned, the petition is dismissed, with costs.

Enter decree on notice in conformity herewith.